ANTHONY PLUREDE *vs.* RICHARD LEVASSEUR, and Logs.

Aroostook.    Opinion April 28, 1896.

*Lien.    Logs.    Non-Resident Debtor.    Jurisdiction.    Notice.    R. S., c. 81, § 21;*
*c. 91, §§ 34, 38, 39, 42, 45.    Stat. 1862, c. 131.*

The statute of this State, providing for bringing actions to enforce a lien by attachment on logs in favor of a laborer, is without qualification or limitation.

Such lien may be thus enforced without regard to the ownership of the logs or the residence of the debtor.

The plaintiff performed labor on logs in this State for the defendant, a non-resident, who was under the employment of a contractor but not owner of the logs.    Notice by publication under the statute was ordered and duly given to the defendant, to the owners of the logs and all parties interested.    The defendant did not appear but made default.    The owners of the logs attached appeared and were admitted as parties to the suit, and contended that no valid judgment could be rendered against the property attached, and that the action could not be maintained for want of proper service upon the principal defendant.    The court ruled that the action could be maintained upon proof of the plaintiff's lien as required by statute.

*Held;* that jurisdiction over the debtor, as well as over the owner of the logs attached, is not indispensable to a valid judgment against the property.

To hold that, in such a case, the lien cannot be enforced by an attachment of the logs, with substituted service by publication, unless there was an attachment of some property belonging to the defendant, or jurisdiction of the person of the defendant, would render the statute ineffectual and nugatory in the very cases in which the lien is most required, and to which it must also have been designed to apply.

EXCEPTIONS BY DEFENDANTS.

The case appears in the opinion.

*F. A. Powers and D. H. Powers,* for plaintiff.

*B. L. Smith,* for log owners.

In a suit against a foreign defendant in personam and in rem against the lumber attached, in order to maintain the action or get a valid judgment against either, the defendant should appear in court, or be legally and properly summoned to appear in court, and the owners of the lumber attached should be properly and legally notified.    In other words, the court should have jurisdiction over both.

This contention is sustained by practice and precedent ever since the earliest statute was enacted, giving the lien.    Other methods are provided for enforcing other kinds of liens, but the method always adopted in proceedings to enforce liens on logs and lumber, under the statute, has been by suit against the operator, the employer, and an attachment of the lumber upon which the labor was performed.    No case can be found where a log-lien judgment has been rendered, unless the court had jurisdiction over the defendant in the suit.

The authorities throw very little light upon the question here involved, but the judgment of the court in *Parks* v. *Crockett*, 61 Maine, 489, would seem strongly to indicate that the defendant must be in court or summoned into court, as a condition precedent to the entry of final judgment.    There the judgment was to be "final unless the sum is reduced, or the action defeated upon an issue between the plaintiff and the defendant."    This would seem to indicate the necessity of an adjudication of the rights of plaintiff and defendant either by hearing or default of defendant,—of course after he was duly summoned into court.

The statute seems to indicate throughout that a defendant must be legally in court.    R. S., c. 91.    Section 38 provides for apportioning costs; § 42 for summoning in the administrator of the employer, or debtor, if deceased; § 45 provides for a judgment against the defendant.

It is true, that judgment may be issued against either, provided both are in court, and justice requires it; but nowhere is there any provision for entering judgment against the lumber unless there is a defendant in court, or one legally summoned into court.    The provisions for issuing separate execution against defendant for excess above amount protected by lien, and for the apportionment of costs and discontinuance as to any defendant, are all upon the assumption that there must be a defendant, or defendants, in court.

The defendant was not in court, nor legally summoned into court.    There was no personal service on him.    R. S., c. 82, § 21.

In order to justify the court in ordering notice by publication,

two things must appear: the necessary failure to get personal service, and an attachment of his goods or estate. The court must be satisfied of these facts.

But whether or not it should appear that the defendant is not within the officer's precinct, it should appear of record, by the notice published or otherwise, that he had no tenant, agent, or attorney within the state. That is, it should appear that the court so found. In this case it does not appear in the notice or elsewhere.

There was no adjudication upon any of the matters upon which the court must be satisfied before issuing the statute order of notice to defendant.

SITTING: PETERS, C. J., FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

WHITEHOUSE, J. This is an action of assumpsit brought under the statute to enforce a lien for the plaintiff's personal services on certain railroad ties and cedar logs attached on the writ. The plaintiff did not perform the labor by virtue of a contract with the owner of the ties and logs, but while in the employment of the defendant, who was in charge of the undertaking as a contractor.

It is provided by section thirty-eight of chapter ninety-one R. S., that: "whoever labors at cutting, hauling, rafting or driving logs or lumber, . . . . has a lien thereon for the amount due for his personal services, and the services performed by his team, which takes precedence of all other claims, except liens reserved to the state; continues for sixty days after the logs or lumber arrive at the place of destination for sale or manufacture, and may be enforced by attachment;" and by section thirty-nine that "such notice of the suit as the court orders, shall be given to the owner of the logs or lumber, and he may be admitted to defend it." Section forty-four of the same chapter is as follows: "In all lien actions, when the labor or materials were not furnished by a contract with the owner of the property affected, such owner may voluntarily appear and become a party to the suit. If he does not

so appear, such notice of the suit as the court orders, shall be given him, and he shall then become a party to the suit."

It is further provided in section forty-five that, "in any such action, judgment may be rendered against the defendant and the property covered by the lien, *or against either*, for so much as is found due by virtue of the lien."

In this case the defendant is represented in the writ to be "of St. Francis, in the Province of New Brunswick," and it was ordered by the court that notice be given by publication "to said defendant and the owners of said railroad ties, logs and lumber and all parties interested."

In pursuance of this notice, which is conceded to have been duly published, the owners of the logs and lumber attached on the writ, appeared by counsel and were admitted as parties and permitted to defend the suit. The principal defendant did not appear, but made default. In behalf of the owners it was contended that no valid judgment could be rendered against the property attached, and that the action could not be maintained for want of proper service upon the principal defendant; but the court ruled that the action could be maintained upon proof of the plaintiff's lien as required by statute. The jury found that the plaintiff had a lien on the property attached for the sum of $59.50, and the case comes to this court on exceptions to this ruling of the presiding justice.

It is the opinion of the court that the ruling was correct.

The defendant was an alien, and no personal service was ever made upon him within the limits of this state. Process sent to him out of the state, and process published within it were equally unavailing for the purpose of establishing any personal liability on the part of the defendant. *Pennoyer* v. *Neff*, 95 U. S. 715. It is not claimed, therefore, that the plaintiff is entitled to judgment against the person of the debtor, but only to judgment against the property attached.

It is urged in behalf of the owners, however, that the court has no power to render a judgment against either, unless the debtor, who is the original defendant in the suit, appears in court or is legally notified to appear, and the owners of the property attached

are also properly and legally notified. In other words, the argument of the counsel for the general owners is, that jurisdiction over the debtor as well as over the owner of the property is indispensable to a valid judgment against the property.

It is clear that this contention is not sustainable. Such a doctrine would defeat the very purpose of all the legislative enactments on this subject since 1848, and be opposed to the whole tenor of judicial opinion in regard to it, not only in this State, but in other jurisdictions having similar statutes. Prior to the statute of 1848, confiding laborers who had no contract relations with the owners of the logs, were frequently defrauded of their hard-earned wages by unscrupulous operators by whom they were employed, and the legislature felt impelled to extend some protection against the wrongs thus practiced upon a deserving class by irresponsible contractors. This remedial legislation was evidently based on the theory that the labor should be deemed to have been performed on the credit of the logs, regardless of their ownership; and the later enactment, requiring notice to be given to the owners of the logs, was obviously designed to render the practical operation of the principle just to the owner as well as to the laborer. Thus the owners would not only make their contracts with full knowledge that the lumber was charged with a lien in favor of the laborer for services which greatly enhanced its value, and be enabled to protect themselves by requiring security from the operator if they saw fit; but by having an opportunity to contest the validity of the lien claimed and the amount due, they would also be enabled to protect themselves against any injustice which might result from collusion between the contractor and the laborer. *Spofford* v. *True*, 33 Maine, 291; *Redington* v. *Frye*, 43 Maine, 578; *Oliver* v. *Woodman*, 66 Maine, 54; *Reilly* v. *Stephenson*, 62 Mich. 509; *Streeter* v. *McMillan*, 74 Mich. 123; Phillips Mech. Liens, §§ 320–321.

The provisions of the statute respecting the enforcement of the lien are in harmony with the elementary principle that the lex rei sitae attaches to movables as well as to immovables, and that the state has absolute dominion over all property within its borders, no matter where the owner is domiciled. Wharton on Confl. of Laws,

§§ 310–771. " The first jurisdictional inquiry is whether the court has authority over the subject matter; and second, whether it had authority over the parties. A judgment in rem binds the res in the absence of any personal notice to the parties interested. Therefore, in a large number of cases involving the effect of a judgment in rem, no inquiry in regard to jurisdiction over the parties is material." Freeman on Judgts. § 611, and cases cited. So in *Pennoyer* v. *Neff*, 95 U. S. supra, the court say : " Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of the proceedings taken, where property is once brought under the control of the court by seizure or some equivalent act. Such service may be sufficient for the purpose of enforcing a lien upon it." In such a case, however, the judgment must be substantially a judgment in rem, good only against the particular property attached, and of no effect as to the person of the defendant, or as to other property. *Boswell's Lessee* v. *Otis*, 9 How. 336; *Eastman* v. *Wadleigh*, 65 Maine, 251 ; R. S., C. 81, §§ 12 and 21.

The case at bar is distinguished from the cases cited, it is true, in the fact that the property attached, on which the lien was claimed, was not the property of the debtor who was named as the original defendant in the suit. It is therefore contended in behalf of the owners that, in case of a non-resident defendant, jurisdiction can only be obtained in the manner prescribed by section 21, chap. 81, R. S., and that notice by publication is only authorized when it appears that the defendant cannot be found within the officer's precinct, that he has no tenant, agent or attorney in the state, and that his goods and estate are attached on the writ.

It should be deemed a sufficient answer to two of these objections, in the first place, that in a court of general jurisdiction, in the absence of anything to the contrary, the presumption is that all the facts requisite to authorize notice by publication were duly made to appear to the satisfaction of the court before the order for such notice was given. *Sanborn* v. *Stickney*, 69 Maine, 344; *Treat* v. *Maxwell*, 82 Maine, 76. It is not claimed here that the defendant was an inhabitant of this state, or that he had any tenant

agent or attorney in the state; but it is still insisted that the court had no power to order notice by publication because no property of the defendant was attached.

It must be remembered, however, that this is not a proceeding under section 21, chap. 81, R. S., to obtain satisfaction for the plaintiff's debt out of the defendant's property. It is a suit based on section 38, chap. 91, R. S., to enforce the plaintiff's lien on certain logs by an attachment of the identical logs, and not by an attachment of any property of the defendant. True, section 42 of chap. 91 provides that, "the declaration must show that the suit is brought to enforce the lien," and that "all other forms and proceedings shall be the same as in ordinary actions of assumpsit." But an examination of the original act (ch. 131, Laws of 1862), from which this provision was condensed, clearly shows that it was simply designed to obviate certain technical difficulties previously experienced in enforcing liens, by specifying one of the averments of the declaration and prescribing in a general way the form of the judgment necessary to effectuate the lien. It was never intended to be construed in connection with section 21, chap. 81, R. S., so that the power of the court to order notice should be restricted to those cases in which the property of the defendant was attached. Furthermore, it was held in *Parks* v. *Crockett,* 61 Maine, 494, that this act, though mandatory in form being remedial in its nature, must be deemed permissive and not exclusive; and that judgment and execution in the common form, as well as a judgment in rem, might be sufficient to make the lien claim available. It may also be observed that the position there taken by the court in the discussion of that question has a relative significance in the case at bar. "When the officer is commanded in such execution to seize and sell the property of the judgment debtor," says Chief Justice PETERS, "he will be justified in taking the property attached on the original precept, although not belonging to such debtor. It will be regarded as his (the debtor's) goods and estate for the purpose of satisfying such execution, and the general owner, whose property is legally encumbered with such lien, will be bound by it. The idea of the legislature undoubtedly was that such

proceedings, if pursued as a remedy, might have substantial correctness enough for practical purposes."

The provision in section forty-five of chap. 91, R. S., that judgment may be rendered against the defendant and the property, *or against either*, affords a plain implication that a valid judgment might be rendered against the property attached on the writ, though not the property of the defendant, and though the court had no jurisdiction to render judgment against the person of the defendant. It is not in controversy that if the logs covered by the lien in this case had been the property of this non-resident defendant, notice by publication as given would have been sufficient to authorize judgment in rem. There is no provision in the statute requiring any other or different notice when the logs are not the property of the non-resident defendant, but are owned by persons residing in this state. It is a satisfaction to remark, also, that in such a case, actual notice by order of court is obviously of far less importance to the non-resident defendant than it would be if he owned the property covered by the lien, especially as the probability is very strong that in the former case the defendant would receive actual notice of the attachment by means of his contract relations with the owner of the logs.

The statute provides that the lien may be enforced by attachment, without limitation or qualification. It declares, in effect, that it may be so enforced without regard to the ownership of the logs, or the residence of the debtor. This statute should be construed with reference to the mischief to be remedied and the object to be accomplished. It has been seen that the great purpose of it evidently was to afford security to the laborer against the irresponsible employer. In the case of non-resident contractors who have no attachable property in the state, this lien on the logs is the laborer's only protection. To hold that in such case the lien cannot be enforced by an attachment of the logs without an attachment of some property belonging to the defendant, or jurisdiction of the person of the defendant, would be to hold the statute ineffectual and nugatory in the very cases in which the lien is most required, and to which it must also have been designed to apply.

Thus construed, the statute would but "keep the word of promise" to the laborer's ear and break it to his hope. It cannot be necessary to give the act such a contradictory and self-destructive interpretation.

In the case at bar the property covered by the lien was duly attached on the writ. The defendant being a non-resident, the court ordered notice by publication to both the defendant and the general owners of the logs. This order was in harmony with all the provisions of our statutes relating to the enforcement of such liens, and was moreover a reasonable exercise of the inherent power of the court involved in its jurisdiction to render judgment to effectuate the lien. The general owners duly appeared and contested the validity of the lien and the amount due thereon. The jury found that the plaintiff had a lien on the logs and lumber attached for the sum of $59.50, and no valid and sufficient reason has been shown why the entry should not now be,

*Exceptions overruled.*